IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHAMPION NATIONAL SECURITY, INC. and UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL SECURITY SERVICES, <br><br>  Plaintiffs, <br><br> v. <br><br> A&A SECURITY GROUP, LLC, A & ASSOCIATES, INC., GARRETT CIZEK, ERIC FERNANDEZ, SHAWN INMAN, BILL MCCOY, DAVID ROBINSON, and PETER SCARABAGGIO, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | Civil Action No. 3:21-cv-00528-M |

**MEMORANDUM OPINION AND TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION**

Before the Court is Plaintiffs' Motion for Temporary Restraining Order [ECF No. 29]. The Court held oral argument on the Motion on April 7, 2021, and decided the matter pursuant to the parties' stipulation [ECF No. 39] that they presented all of their evidence in writing before the argument. After review of the Motion, Memorandum in Support, and Appendix in Support [all at ECF No. 29], the Second Amended Complaint [ECF No. 28], the individual Defendants' Response [ECF No. 32], joined by A&A Security Group and A & Associates [ECF No. 33], the individual Defendants' Appendix in Support [ECF No. 34], and the applicable law, the Court concludes that the Application should be GRANTED IN PART.

Plaintiff Champion National Security, Inc. is a security services company that previously employed the individual Defendants. ECF No. 28 at ¶ 5, 18. Bill McCoy served as Champion's Chief Operations Officer and Chief Financial Officer. ECF No. 29-4 at ¶ 22. Garrett Cizek, Shawn

1

Inman, and David Robinson served as Regional Directors. ECF No. 29-4 at ¶¶ 8, 22. Eric Fernandez and Peter Scarabaggio served as Branch Managers. ECF No. 29-2 at ¶ 9; ECF No. 29-4 at ¶ 8. In the months following the December 6, 2020 acquisition of Champion by Allied Universal Security Services, the individual Defendants left Champion. ECF No. 29-5 at ¶ 6. Fernandez, Inman, McCoy, Robinson, and Scarabaggio resigned. ECF No. 29-2 at ¶ 16; ECF 29-4 at ¶ 31; ECF No. 29-5 at ¶¶ 34, 35; ECF No. 29-6 at ¶ 31. Cizek was terminated by Champion. ECF No. 29-6 at ¶ 56.

Each of the individual Defendants had Employment Agreements with Champion.[1] ECF No. 29-2 at 9-15; ECF No. 29-4 at 11-17, 19-25; ECF No. 29-5 at 11-17; ECF No. 29-6 at 16-22, 24-30. The Employment Agreements include confidentiality/non-disclosure, non-compete, and non-solicitation provisions:

> 6.1 <u>Proprietary Information</u>. Employee shall not during the period of employment, or at any time thereafter (irrespective of the circumstances under which Employee's employment by Employer terminates), directly or indirectly use for his own purpose or for the benefit of any person or entity other than Employer, nor otherwise disclose, any proprietary information, as defined below, to any individual or entity, unless such disclosure has been authorized in writing by the Board or is otherwise required by law. For purposes of this Agreement, the term proprietary information shall include, but is not limited to: (a) the name or address of any prospective client or client or any information concerning the transactions or relations of any client with Employer or any of its shareholders; (b) any pricing, marketing, sales or contractual relationships with prospective clients, clients or referral sources; (c) any information concerning any product, service, methodology, analysis, presentation, technology or procedure employed by Employer but not generally known to its clients or competitors, or under consideration or development by or being tested by Employer but not at the time offered generally to clients; (d) any information relating to Employer's computer software, computer systems, pricing or marketing methods, capital structure, operating results, borrowing arrangements or business plans; (e) any information which is generally regarded as confidential or proprietary in any line of business engaged in by Employer; (f) any information contained in any of Employer's written or oral policies and procedures or employee manuals; (g) any information belonging to

---

[1] McCoy's Employment Agreement was assigned to Champion on January 1, 2015 by McCoy's prior employer, Unique Security Services. ECF No. 29-6 at 3. His Employment Agreement contains the same terms as all of the other Individual Defendants' Employee Agreements. *Id*. at 16-22.

2

clients or affiliates of Employer which Employer has agreed to hold in confidence; (h) any other information which Employer has reasonably determined to be confidential or proprietary; and (i) all written, graphic, electric and other material relating to any of the foregoing . . . . Employee shall not . . . directly or indirectly give or disclose any confidential records (as hereinafter defined) to, or permit any inspection or copy of confidential records by, any individual or entity other than in the ordinary course and scope of such individuals or entity's employment or retention by Employer, nor shall he use or retain any of the same following termination of his employment. Employee shall promptly return to Employer all confidential records upon the termination of Employee's employment with Employer. For purposes hereof, confidential records includes all correspondence, contracts, memoranda, files, analyses, studies, reports, notes, documents, manuals, books, lists, financial, operating or marketing records, computer software, magnetic tape, or electronic or other media or equipment of any kind which may be in Employee's possession or under his control or accessible to him which contains or constitutes any proprietary information.

6.2     <u>Confidential Records</u>. Employee shall not during the period of employment, or at any time thereafter (irrespective of the circumstances under which Employee's employment by Employer terminates), except as required by law, directly or indirectly give or disclose any confidential records (as hereinafter defined) to, or permit any inspection or copying of confidential records by, any individual or entity other than in the ordinary course and scope of such individuals or entity's employment or retention by Employer, nor shall he use or retain any of the same following termination of his employment. Employee shall promptly return to Employer all confidential records upon the termination of Employee's employment with Employer. For purposes hereof, confidential records includes all correspondence, contracts, memoranda, files, analyses, studies, reports, notes, documents, manuals, books, lists, financial, operating or marketing records, computer software, magnetic tape, or electronic or other media or equipment of any kind which may be in Employee's possession or under his control or accessible to him which contains or constitutes any proprietary information. All confidential records shall be and remain the sole property of Employer during the period of employment and thereafter.

7.1     <u>Non Compete</u>. Except with Employer's written consent, during employment and for a period of two years thereafter, Employee shall not engage as an employee, consultant, contractor, shareholder, member, partner or owner of, or to: (i) any company engaged in the security guard business in the metropolitan area of the Employer office where Employee was employed, or (ii) any company who was a customer of Employer or of any affiliate of Employer at any time in the year preceding the Date of Termination or to whom at the Date of Termination Employer, or its affiliate, was marketing security guard services.

7.2     <u>Non-Solicitation</u>. During employment for two years following termination, Employee shall not, except on behalf of Employer: (i) solicit Employee customers

>or any prospective customer whom Employer or Employee marketed security guard services during the one year prior to termination, or (ii) hire any employees of Employer.

ECF No. 29-2 at 10-12.

Plaintiffs provided declarations stating that the individual Defendants started or assisted in starting Defendants A&A Security Group, LLC, and A & Associates (collectively, "A&A") either promptly after leaving Champion (after December 6, 2020) or while still employed by Champion. *See, e.g.,* ECF No. 29-6 at 8-9, 12-13 (Nagy Declaration). Elizabeth Abbitt-Harris, a Regional Vice President of Allied, stated in her declaration that Fernandez and Cizek, while still employed by Champion, had a call with a Champion client on February 18, 2021, in which they encouraged the client to cancel its contract with Champion and instead allow A&A and/or its sub-contractor to provide it with security services. ECF No. 29-2 at 4. Abbitt-Harris also stated that on February 25, 2021, Fernandez emailed to an A&A email address (efernandez@aasecuritygroup.net) a spreadsheet entitled "Employees," which included the names, employee identification numbers, phone numbers, home addresses, email addresses, dates of birth, dates of hire by Champion, and Social Security numbers for various Champion employees. *Id.* at 6. Delmar Laury, President of Allied Universal's Mid-Atlantic Region, stated in his declaration that Defendants Robinson, Cizek, McCoy, and Inman worked together to perform administrative and planning tasks for A&A, such as creating internal forms, selecting office space, and inquiring about website hosting, and used branded email addresses to organize their planning, and made contact with potential vendors to negotiate potential terms for the new venture. ECF No. 29-4 at 6-7. Laury also stated that, before beginning employment with A&A, Scarabaggio wiped the laptop supplied to him by Champion of all available data. *Id.* at 9. Jorge Marquez, a Wage & Hour Compliance Manager for Allied, stated in his declaration that Robinson, Cizek, McCoy, and Inman discussed obtaining new business for

A&A with a client in the Cleveland market, while Cizek and Inman were still employed by Champion. ECF No. 29-5 at 7. Justin Nagy, President of Allied Universal's Central Region, stated in his declaration that Cizek forwarded from his Champion email address to his personal email address a certificate authorizing A&A to do business in Missouri, and that Cizek attached a flash drive or similar external storage device to his Champion computer and copied an entire Champion directory, entitled "Client Files," onto the flash drive. ECF No. 29-6 at 12-13. Defendants dispute some of the specific claims against them but rely principally on the allegation, apparently undisputed, that Jason Carroll, President of Champion, told them the restrictions in their contracts were "unenforceable." ECF No. 32 at 22; ECF No. 34 at 044. That statement, in the Court's view, does not release or abrogate those provisions from enforcement by Plaintiffs.

At least five of the six individual Defendants are currently employed by or otherwise affiliated with A&A. ECF No. 34 at 010 (McCoy Decl. at ¶ 18); *Id*. at 014 (Robinson Decl. at ¶ 13); *Id*. at 019 (Inman Decl. at ¶ 14); *Id*. at 024 (Fernandez Decl. at ¶ 8); *Id*. at 028 (Scarabaggio Decl. at ¶ 12). Cizek claims not to be. *Id*. at 004 (Cizek Decl. at ¶ 17).

In their Second Amended Complaint, Plaintiffs make the following allegations. The individual Defendants have repeatedly breached and continue to breach their non-competition, non-solicitation, and confidentiality and non-disclosure contractual obligations [ECF No. 28 at ¶¶ 182-191]. Defendants Cizek, Fernandez, Inman, and Scarabaggio have misappropriated Plaintiffs' trade secrets in violation of the Defend Trade Secrets Act of 2016 [*Id*. at ¶¶ 203-216] and the Texas Uniform Trade Secrets Act [*Id*. at ¶¶ 217-223]. Defendants Cizek, Fernandez, Inman, McCoy, and Scarabaggio have breached their duty of loyalty to Plaintiffs [*Id*. at ¶¶ 224-229]. All Defendants have allegedly engaged in tortious interference with Defendants' contracts

with Plaintiffs [*Id.* at ¶¶ 192-97], tortious interference with prospective business relations [*Id.* at ¶¶ 198-202], unfair competition [*Id.* at ¶¶ 230-36], and civil conspiracy [Id. at ¶¶ 237-41].

A TRO is "a highly accelerated and temporary form of preliminary injunctive relief." *Lee v. Verizon Commc'ns, Inc.*, 2012 WL 6089041, at *1 n. 2 (N.D. Tex. Dec. 7, 2012) (Fitzwater, J.). To be entitled to a TRO, a movant must establish the same four elements for obtaining a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury, which would occur if the injunction is denied, outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Women's Med. Cir. of Northwest Houston v. Bell*, 248 F.3d 411, 419 n. 15 (5th Cir. 2001); *Ladd v. Livingston*, 777 F.3d 286, 288–90 (5th Cir. 2015). Preliminary injunctive relief is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

With respect to Defendant Inman, the Court concludes that Plaintiffs have not demonstrated a substantial likelihood of success on the merits. On February 14, 2021, Champion President Carroll sent Inman an email that stated: "Per our conversation, I hereby release you from your Champion employment agreement and the non-compete within." ECF No. 33 at 000183-84. The email included a signature block for Carroll. The Employment Agreement states that:

> 7.1    Non Compete.    ***Except with Employer's written consent***, during employment and for a period of two years thereafter, Employee shall not engage as an employee, consultant, contractor, shareholder, member, partner or owner of, or to: (i) any company engaged in the security guard business in the metropolitan area of the Employer office where Employee was employed, or (ii) any company who was a customer of Employer or of any affiliate of Employer at any time in the year preceding the Date of Termination or to whom at the Date of Termination Employer, or its affiliate, was marketing security guard services.

6

ECF No. 29-4 at 13 (emphasis added). Carroll's email constitutes express written consent that eliminated Inman's non-compete obligations under the Employment Agreement. ECF No. 33 at 000183-84. Carroll's email also purports to release Inman from the rest of his Employment Agreement. *Id*. Paragraph 8.2 of the Employment Agreement requires modifications to be in a signed writing. ECF No. 29-4 at 15. The Court finds that the February 14, 2021 email is a signed writing by Carroll that modified Inman's Employment Agreement and is enforceable under Texas law. *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704 (N.D. Tex. 2013) (finding that the Texas Supreme Court would hold that an e-mail with a signature block constitutes a signed writing). Although only Carroll signed the email, "a contract can still be effective if signed by only one party. . . the other may accept by his acts, conduct, or acquiescence in the terms of the contract." *DeClaire v. G & B McIntosh Family Ltd. Partnership*, 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no writ). Here, Inman accepted when he joined A&A. The contractual provisions are thus likely ineffective as to Inman.

With respect to Defendant Fernandez, the Court finds that Plaintiffs have not shown a substantial likelihood of success on the merits. Fernandez signed both an Employment Agreement and later, a Confidential Separation Agreement and General Release ("Separation Agreement"). ECF No. 29-2 at 9-15, 17-25. The Separation Agreement provides in part:

> 11. <u>Restrictive Covenants</u>. Employee agrees that the covenants and post-employment restrictions in the Employee's previously executed Employment Agreement are incorporated by reference into this Agreement and shall continue in full force and effect.
>
> 16. <u>Entire Agreement/Amendment</u>. Except as otherwise indicated herein, the parties hereto agree that this Agreement, including any Exhibits attached hereto, constitutes the entire agreement among the parties hereto regarding the subject hereof, and that this Agreement supersedes any and all prior and/or contemporaneous written and/or oral agreements relating to Employee's employment with the Company and separation therefrom. Employee acknowledges that this Agreement may not be modified except by written document, signed by

7

> the parties hereto. Notwithstanding the foregoing, Employee acknowledges and agrees that any post-employment restrictions or obligations contained in Employee's Employment Agreement, or any other agreement Employee may have with the Company or any of the Releases, shall remain valid, enforceable, and in full force and effect.
>
> 23.   <u>Controlling Law and Consent to Jurisdiction and Venue</u>. This Agreement shall be construed and enforced under the laws of and before the courts of the State of Ohio. The parties hereby consent and agree to jurisdiction and venue in the State of Ohio, such that all judicial proceedings arising under or related to this Agreement shall be brought in any state or federal court of competent jurisdiction located in the State of Ohio. By executing this Agreement, each party hereby generally and unconditionally: (a) consents to personal jurisdiction in the state and federal courts located in the State of Ohio; (b) waives any objection as to jurisdiction or venue in the state or federal courts located in the State of Ohio; (c) agrees not to assert any defense based on lack of jurisdiction or venue in the aforesaid courts; and (d) irrevocably agrees to be bound by any judgment rendered in connection with this Agreement.

ECF No. 29-2 at 21, 23-24.  Although the Separation Agreement incorporates by reference the covenants and post-employment restrictions present in the Employment Agreement, the Separation Agreement provides that alleged breaches of the Agreement are to be "enforced under the law of and before the courts of the State of Ohio."  ECF No. 29-2 at 24.  Plaintiffs have not briefed Ohio law or whether jurisdiction exists here.  Without finally resolving those issues, the Court cannot now find that Plaintiffs are likely to succeed on the merits of the claims against Defendant Fernandez.

Plaintiffs have demonstrated that all individual Defendants other than Inman and Fernandez (collectively called "McCoy et al") have materially breached their contractual obligations to Champion.  In particular, Plaintiffs proved that McCoy, Cizek, Robinson, and Scarabaggio have breached their non-compete, non-solicitation, and confidentiality agreements with Plaintiffs.  To state a prima facie claim of breach of contract under Texas law, Plaintiffs must show (1) the existence of a valid and legally binding agreement; (2) performance by plaintiff; (3) breach of the duties and obligations imposed therein; and (4) damages sustained because of the

8

breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W. 3d 479, 501 n.21 (Tex. 2018). Plaintiffs have demonstrated the existence of an enforceable contract – the Employment Agreements signed by McCoy, Cizek, Robinson, and Scarabaggio – and that they have violated the terms of their Employment Agreements by engaging as employees or consultants of A&A, soliciting Champion customers, in some cases hiring Champion employees, and using Plaintiffs' confidential and proprietary information.

Under Texas law, a covenant that restricts competition is valid and legally binding if it is reasonable in time, scope, and geography and, as a threshold matter, if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made. *Marsh USA v. Cook*, 354 S.W.3d 764, 771 (Tex. 2011). A restrictive covenant is ancillary to or part of an agreement if (1) the consideration given by the employer in the otherwise enforceable agreement gives rise to the employer's interest in restraining the employee from competing; and (2) the covenant is designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006). Both elements are satisfied here. In the Employment Agreement, McCoy et al also agreed to maintain the confidentiality of Champion's proprietary and confidential information with which they were provided. The Employment Agreements were designed to ensure that confidential and proprietary information provided to McCoy et al would not be exploited.

Second, with regard to whether the covenants are reasonable in time, scope, and geography, the Court finds they are reasonable in time and scope. First, the covenant restricts McCoy et al for two years. "Texas courts have generally upheld non-compete periods ranging from two to five years as reasonable." *Brink's Inc. v. Patrick*, 2014 WL 2931824, at *5 (N.D. Tex. June 27, 2014) (citations omitted). Next, with regard to scope, the non-compete and non-solicitation covenants

do not impose a greater restraint than is necessary to protect Plaintiffs' legitimate business interest. Tex. Bus. Com. Code § 15.50(a). However, the geographical limits of the non-compete covenant could be considered unreasonable if not limited to the geographic territory in which the employee worked and where the new company has an office. At the hearing, Defendants agreed that the Employment Agreement should be construed as follows:

> 7.1  <u>Non Compete</u>. Except with Employer's written consent, during employment and for a period of two years thereafter, Employee shall not engage as an employee, consultant, contractor, shareholder, member, partner or owner of, or to: (i) any *office* of a company in the security guard business in the metropolitan area of the Employer office where Employee was employed, or (ii) any company who was a customer of Employer or of any affiliate of Employer at any time in the year preceding the Date of Termination or to whom at the Date of Termination Employer, or its affiliate, was marketing security guard services.

The Court is permitted to reform the agreement, and does so to clarify the revised geographic scope as stated above. Tex. Bus. Com. Code § 15.51(c); *TransPerfect Translations, Inc. v. Leslie*, 594 F. Supp. 2d 742, 756 (S.D. Tex. 2009).

Second, Plaintiffs have demonstrated that they will suffer irreparable harm if a temporary restraining order is not granted. The "use of an employer's confidential information and the possible loss of customers is sufficient to establish irreparable harm." *TransPerfect Translations, Inc.*, 594 F. Supp. 2d at 757 (S.D. Tex. 2009).

Third, the harm to Plaintiffs outweighs the potential harm to McCoy et al. Should they be permitted to continue to violate their contractual obligations, Plaintiffs will continue to lose customer goodwill and business. *Evans Consoles, Inc. v. Hoffman Video Sys., Inc.*, 2001 WL 36238982, at *10 (N.D. Tex. Dec. 6, 2001) (holding the harm to defendant does not outweigh the harm to a plaintiff in terms of lost customer goodwill and business).

Finally, Plaintiffs have shown that the public interest is served by granting this relief. "[I]t is in the public interest to uphold contracts and to enforce valid [ ] agreements." *Brink's Inc. v. Patrick*, No. 3:14-cv-775, 2014 WL 2931824, at *9 (N.D. Tex. June 27, 2014).

The Court opts to enter a limited temporary restraining order, as it is unable to assess the credibility of witnesses based on the disputed evidence before it.

Accordingly, this Court ORDERS[2]:

1. Defendants Bill McCoy, Garrett Cizek, David Robinson, and Peter Scarabaggio are enjoined from using or disclosing any confidential or proprietary information of Plaintiff, Champion National Security, Inc. ("Champion") and of Plaintiff, Universal Protection Service, LLC, ("Allied Universal") (to the extent McCoy, Cizek, Robinson, and Scarabaggio acquired or had access to such information of Allied Universal following Allied Universal's acquisition of Champion), including but not limited to (a) the name or address of any prospective client or client or any information concerning the transactions of any client of Champion (except to the extent necessary to monitor compliance with this Order); (b) any pricing, marketing, sales or contractual relationships with prospective clients, clients or referral sources of Champion or Allied Universal; (c) any information concerning any product, service, methodology, analysis, presentation, technology or procedure employed by Champion or Allied Universal but not generally known to its clients or competitors, or under consideration or development by or being tested by Champion or Allied Universal but not at the time offered generally to clients; (d) any information relating to Champion's or Allied Universal's computer software, computer systems, pricing or marketing methods, capital structure, operating results, borrowing arrangements or business plans.

2. Defendants Bill McCoy, Garrett Cizek, David Robinson, and Peter Scarabaggio are enjoined from soliciting Champion customers or any prospective customer to whom each of them marketed security guard services during the one year prior to termination by Champion, regardless of whether such solicitation was successful or not. **By April 16, 2021,** Plaintiffs shall provide counsel for Defendants with a list of such customers.

3. The parties shall appear at 1100 Commerce St., Dallas, TX (the Earle Cabell Federal Building), Room 1572, at 5:30 p.m. on **April 27, 2021**, to show cause why a Preliminary Injunction should not be ordered either on the terms and conditions that are the subject of the Temporary Restraining Order or on narrower or broader terms, including the possibility of injunctive relief against Inman or Fernandez.

---

[2] For purposes of this Temporary Restraining Order, the Court will not enforce sections (e) through (i) of the Employment Agreement's Non-Disclosure of Proprietary Information, in paragraph 7.1 of the Employment Agreement, as those provisions are unduly vague. ECF No. 29-2 at 10-11.

11

4. The bond Plaintiffs previously posted in the amount of $10,000 is sufficient for purposes of issuance of the Temporary Restraining Order set forth herein.

5. This Order is binding on Defendants Bill McCoy, Garrett Cizek, David Robinson, and Peter Scarabaggio, their agents, servants, employees, representatives, assigns, and all persons acting on their behalf or in concert or participation with them, including but not limited to A&A Security Group, LLC, and A & Associates, Inc., or any person who receives actual notice of this Order by personal service, notice by telephone (whether in person or to their attorney), facsimile, or otherwise.

6. Plaintiffs and Defendants shall confer regarding discovery necessary for the Preliminary Injunction and advise the Court by noon on **April 15, 2021** regarding any disagreements about discovery. The Court will accelerate discovery necessary to pursue or defend the Preliminary Injunction upon reasonable request in writing.

**SO ORDERED**.

April 13, 2021.

_____
BARBARA M. G. LYNN
CHIEF JUDGE